SEBASTIÁN CANET, Petitioner and Appellee, *v.* DISTRICT COURT OF PONCE, Respondent; BUENAVENTURA RODRÍGUEZ DROZ ET AL., Appellants.

No. 8620. Argued December 7, 1942.—Decided December 15, 1942.

*Ramón G. Goyco* for appellants. *E. Tristani, Jr.*, for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

We are asked to dismiss the appeal taken in this case on the ground that it is frivolous, it being alleged that it was taken with the sole purpose of delaying the execution of the judgment appealed from. Appellant filed written opposition and the hearing on the motion took place on December 7 of this year without appearance by the parties.

The judgment appealed from was entered by Mr. Justice Snyder, as Acting Judge in Vacation on a writ of certiorari, setting aside an order of the District Court of Ponce which order in turn stopped a mortgage foreclosure proceeding instituted by Sebastián Canet against Buenaventura Rodríguez Droz, Isabel Epitacia, Manuel Guillermo y Buenaventura Rodríguez Gracia, while defendant Manuel Guillermo Rodríguez Gracia should be in the armed forces and until three months after such military service should be terminated, and the case was sent back to the lower court for further proceedings not inconsistent with the opinion on which it is based.

Literally transcribed said opinion reads as follows:

"This case was heard on a writ of certiorari to review the action of the District Court of Ponce in granting a motion filed on behalf of an alleged soldier to stay the proceedings in the suit herein by virtue of the Soldiers' and Sailors' Civil Relief Act of 1940.

"On February 5, 1928, Rodríguez Droz and two of his children, Isabel Epitacia and Manuel Guillermo, executed a public deed labeled, 'reconocimiento de Crédito y Garantía Hipotecaria', providing for an open account for Rodríguez Droz with the firm of S. Canet & Co., S. en C., guaranteed jointly and severally by the said two children. To implement their guarantee, the said two children in this same document each mortgaged the ⅛ interest which each owned in two estates, consisting of six farms, held, with others, in common and undividedly.

"On December 12, 1931 Rodríguez Droz and another child, Buenaventura, executed another public deed labeled, 'Liquidación de Cuenta Corriente y Ampliación de Garantía'. By this document Rodríguez Droz recognized that he owed S. Canet (who had succeeded the Canet firm) $2,372.02 on his open account. As in the first deed executed by the two other children, this third child of Rodríguez Droz in this second deed jointly and severally guaranteed payment of the said amount, and similarly mortgaged his ⅛ interest in the above-described properties to secure payment thereof.

"The complaint in this case, filed on September 10, 1941, alleges that on December 30, 1939, the open account was liquidated at $1,326.76; that early in 1940 a further indebtedness of $321.41

was incurred; that on February 26, 1941, the parties agreed that the said two amounts, totalling $1,648.16, would be payable with interest at 8 per cent beginning December 30, 1939, on the first amount, and February 26, 1941, on the second amount; that no payments thereon have been made; and that $300 in attorney's fees and $100 in expenses, in view of the provisions of the aforesaid deeds guaranteeing payment thereof, are also due and owing to the plaintiff. The plaintiff prayed that Rodríguez Droz and his three children be ordered to pay him the amounts as aforesaid, and that to satisfy said judgment the interest of the defendants in the said properties be sold at public auction. The plaintiff also attached the same properties to make effective his judgment.

"On February 4, 1942, Manuel Guillermo, by his attorney, filed a motion to stay the proceedings herein until three months after the termination of the war. The motion made the following allegations:

"'1ro. Que es co-demandado en esta acción y además, con anterioridad a la radicación de la demanda, adquirió todos los derechos y acciones de los co-demandados, en los bienes hipotecados, siendo por tanto la única parte interesada realmente en esta ejecución de hipoteca, que es una acción *in rem*, por ser dueño único de los bienes hipotecados.

"'2do: Que ingresó en el ejército de Estados Unidos, en servicio activo en octubre de 1940, el compareciente y que actualmente está en Camp Tortuguero, Vega Baja, Puerto Rico, como Sargento Técnico, de la Banda del 296 de Infantería.

"'3ro: Que de acuerdo con el Soldier's and Sailor's Civil Relief Act of 1940, el compareciente, quien alega en este momento que no está en condiciones de pagar la hipoteca que se ejecuta, y carece de recursos y de medios para hacerlo, solicita que se suspenda esta acción, hasta la terminación de la Guerra y tres meses después de la misma, para cuya fecha estará en condiciones el compareciente de hacerle frente a dicha hipoteca.'

"This motion was sworn to by the attorney for the defendants because Manuel Guillermo 'is absent from this jurisdiction and can not swear to it personally.'

"On the same date, the same attorney filed an answer on behalf of all the defendants, denying specifically and generally all the allegations of the complaint. In addition, the answer set up as a special defense that on *September 22, 1941,* Isabel Epitacia and Buenaventura, having sold and conveyed, with others, all their interest in the mortgaged properties to Manuel Guillermo, had no concern

with this suit and were unnecessary parties thereto, and that the suit could not proceed as to Manuel Guillermo, who had been in active military service since October 1940, until three months after the termination of the war, by virtue of the Soldiers' and Sailors' Civil Relief Act of 1940·

·'On May 21, 1942, the district court granted the motion to stay in the terms prayed for. On August 10, 1942 the district court denied a motion for reconsideration. On August 24, 1942 Mr. Justice de Jesús, as *Juez Asociado de Turno* of this court, granted certiorari to review this action of the district court, and hearing thereon was held before the undersigned *Juez Asociado de Turno,* the case being submitted, after the filing of briefs, on September 8, 1942.

██ "It would seem desirable at the outset to determine the nature of this suit. Although it might conceivably be interpreted as a suit to collect a money obligation, the prayer, based on the allegations of the complaint, is not only for the collection of money, but also for the sale of the real estate securing the payment of the said obligation. It would therefore seem clear that this is in substance a suit to foreclose a mortgage or a series of mortgages. *García* v. *Registrar,* 41 P.R.R. 473; *Morales* v. *Cabrera,* 53 P.R.R. 90.

"The Soldiers' and Sailors' Civil Relief Act of 1940 contains the follownig (50) U.S.C.A·, Appendix, §§ 521, 532) provisions:

" 'Section 521. *Stay of proceedings where military service affects conduct thereof.* At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service ·or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, *unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.'*

" 'Section 532. *Mortgages, trust deeds, etc.* (1) The provisions of this section shall apply only to obligations originating prior to the date of approval of this Act and secured by mortgage, trust deed, or other security in the nature of a mortgage upon real or personal property owned by a person in military service at the commencement of the period of the military service and still so owned by him.

" '(2) In any proceeding commenced in any court during the period of military service to enforce such obligation arising out of nonpayment of any sum thereunder due or out of any other breach of the terms thereof occurring prior to or during the period of such service the court may, after hearing, in its discretion, on its own motion, and shall, except as provided in §303 (§533 of this appendix), on application to it by such person in military service or some person on his behalf, *unless in the opinion of the court the ability of the defendant to comply with the terms of the obligation is not materially affected by reason of his military service*—

" '(a) stay the proceedings as provided in this Act; or

" '(b) make such other disposition of the case as may be equitable to conserve the interests of all parties.

" ' ※ ※ ※ ※ ※ ※ ※ '

(Italics ours.)

"The purpose of this act is praiseworthy, and it should be fully and fairly enforced in favor of those to whom it applies. But it does not have the sweeping effect attributed to it by counsel and the district court. It does not purport to provide automatically for a stay in any proceeding involving a soldier on a mere showing of military service. The soldier must allege and *prove* that his ability to comply with his obligation or to prepare adequately a legitimate defense has been materially affected by his military service.

"The defendant contends that we can not interfere with the exercise of discretion by the district court in staying the proceeedings herein. But this discretion is not unfettered. There must be *some* facts before the court to justify its action. The district court never took any testimony on this subject at all. It granted the relief prayed for solely on the pleadings. The motion to stay alleged simply that Manuel Guillermo "no está en condiciones de pagar la hipoteca que se ejecuta, y carece de recursos y de medios para hacerlo . . .". The special defense contained in the answer does not even make that allegation. It only alleges the military service of Manuel Guillermo, and on the basis thereof prays for a stay of proceedings. Moreover, both these pleadings were filed and sworn to by the attorney for the defendants.

"The soldier himself has to this date made no statements whatsoever or offered any proof to the court as required by the statute on whether his 'ability . . . to comply with . . . [his] obligation is . . . materially affected by reason of his military service'.

Indeed, in the special defense of the answer itself we find the allegation that on September 22, 1941, *subsequent to the filing of the complaint herein,* Isabel Epitacia, Buenaventura and others *sold* all their interest in the properties involved herein to Manuel Guillermo. If the soldier was at that time in a sufficiently strong financial position to buy property, he should certainly be required to show, in accordance with the terms of the staute, that his ability to pay the obligation herein was adversely affected by his military service.

"In brief, it is obvious that this question must be determined, not on the basis of allegations in connection therewith, but on proof offered to substantiate such allegations. (*Jamaica Sav. Bank* v. *Bryan,* 25 N.Y.S. (2) 17; *Hunt* v. *Jacobson,* 33 N.Y.S. (2) 661; *Cortland Sav. Bank* v. *Ivory,* 27 N.Y.S. (2) 313; See Annotations in 9 A.L.R. 6; 130 A.L.R. 774; 137 A.L.R. 451). The distirct court should have, and will be required, to conduct a hearing at which the soldier will be given an opportunity to adduce such proof, if any, and the petitioner will, of course, be given an opportunity to refute this proof. Only then will the district court be in a position to bring the exercise of its discretion into play.

 "In view of the fact that his case will be remanded to the lower court for further proceedings, we deem it appropriate to examine two matters discussed by the district court. The petitioner contended that the alleged transfer of the interest of Isabel Epitacia and Buenaventura in the property in question to the soldier was made 'with intent to delay the just enforcement' of the mortgages herein 'by taking advantage' of the Civil Relief Act, and that therefore the said act could not be invoked to stay the proceedings herein, by virtue of 50 U.S.C.A., Appendix, §580, reading as follows:

"'Section 580. *Transfers to take advantage of Act.* Where in any proceeding to enforce a civil right in any court it is made to appear to the satisfaction of the court that any interest, property, or contract has since the date of the approval of this Act been transferred or acquired with intent to delay the just enforcement of such right by taking advantage of this Act, the court shall enter such judgment or make such order as might lawfully be entered or made, the provisions of this Act to the contrary notwithstanding.'

"The district court disposed of this contention in the following language:

"'We deem it unnecessary to pass upon the question as to whether or not the sale of the rights and actions made by the other debtors

to Manuel Guillermo Rodríguez García twelve days subsequent to the filing of the complaint is simulated, or whether it was made with the sole purpose of claiming on behalf of the other debtors, who are not soldiers, the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940, inasmuch as the act itself provides for the case where, in the discretion of the court, such benefit may be granted to other persons subject to the same obligations or responsibilities of the soldier against whom any proceeding might be brought. (See §103, Soldiers' and Sailors' Civil Relief Act of 1940.)'

"Title 50 U.S.C.A., Appendix, §513 (1), referred to by the district court as §103 of the act, provides that whenever a stay may be granted pursuant to the Act, 'such stay . . . may, in the discretion of the court, likewise be granted to sureties, guarantors, endorsers and others subject to the obligation . . . the . . . enforcement of which is stayed . . .'. That section would seem offhand to apply only to those secondarily liable in relation to a soldier. 'While persons jointly liable are within the words "others subject to the . . . liability", the principle of *ejusdem generis* would indicate that 103 (1) [§513 (1)] was restricted to indorsers and those in the position of surety for a service principal.' 55 Harv. L. Rev. 304 (But see, *Griswold* v. *Cady*, 27 N.Y.S. (2) 302, *contra*). If this interpretation is the proper one, the section does not apply to Isabel Epitacia and Buenaventura, as they are not secondary liable in relation to the soldier. On the contrary, they and the soldier are all equaly liable as co-sureties on the obligation of Rodríguez Droz to the plaintiff. Each of them, including the soldier, contracted an obligation *in solido,* and each mortgaged his ⅛ interest in the properties in question to secure his obligation. As a matter of fact, each of them could have been sued separatedly, under his obligation *in solido,* for the total amount of the debt. *Morales* v. *Cabrera,* 53 P.R.R. 90, 99.

"However, it is not necessary at this stage of this proceeding to answer finally the question of whether Isabel Epitacia and Buenaventura are entitled to invoke the protection of §513 (1). Even assuming that §513 (1) gave the lower court discretion in a proper case to stay proceedings as to co-sureties of a soldier, the terms of §580 might nevertheless apply to such a case under certain circumstances. For example, a court might be more disposed to grant such delay when a soldier rather than others similarly situated were involved. Indeed, a soldier might easily have impressive reasons for delay not available to others. It is therefore conceivable that

those interested in such a stay might convey to a soldier to reinforce their legally possible, but faint, hope of obtaining a stay in their own right under §513 (1). We therefore find that, irrespective of the right co-sureties, as here, might have had to consideration of a claim for a stay under §513 (1), it is the duty of the court when, as in this case, there is an allegation that §580 applies, to determine if *any* interest in property has been transferred to · delay enforcement of a civil right in a court. Even if the transfer was for consideration, that does not foreclose inquiry as to the *intent* with which the transfer was made.

"At the hearing to be held on remand the district court should therefore inquire into, and determine, as a matter of *fact,* the intent with which the alleged transfer of the interest of Isabel Epitacia and Buenaventura in the property in question was made. If it finds that the transfer was with intent to take advantage of the act, and the soldier knowingly participated therein, the court must order the foreclosure suit to proceed without further delay as to the *entire* property, 'the provisions of this Act to the contrary notwithstanding'. Soldiers have been put on notice by §580 that if they lend themselves to such a scheme, any interest they previously held in such property, as well as the interest so transferred to them, will remain outside the protective arm of his act.

"At this hearing the soldier will be faced with two horns of a dilemma. If the evidence is that he bought the interest of his co-defendants in this property on September 22, 1941, this will tend to show that his ability to comply with his obligation herein has not been materially affected by his military service, thereby preventing him from obtaining a stay. On the other hand, if his evidence is that his co-sureties conveyed their interest in the properties to him *without consideration,* after the complaint to foreclose the mortgages herein had been filed, this will tend to show that an interest in property has been transferred with intent to delay the enforcement of a civil right, requiring the court under §580 to proceed as though the Civil Relief Act had not been enacted.

"It should also be pointed out that, even if the soldier herein, who entered the military service in October 1940, establishes that §580 has no application to the facts of the instant case, he is not entitled to a stay under this act as to the portion of the property he acquired, subject to the mortgages herein, on September 22,

1941. This act, enacted on October 17, 1940, specifically restricts such relief to 'obligations originating prior to the date of approval of this Act and secured by mortgage . . . upon real or personal property owned by a person in military service at the commencement of the period of the military service and still so owned by him.' 50 U.S.C.A., Appendix, §532 (1); *Twitchell* v. *Home Owners' Loan Corporation*, 122 P. (2) 210, 212 (Ariz. 1942). See *Bianchi* v. *Pierazzi et al.*, 25 P.R.R. 588.

■ "The order of the district court raised the other point in the following language:

" 'As to whether the proceeding might be stayed only as against the former [the soldier] and the case proceeded with against the other co-defendants, we must say that, accepting for the purpose of argument that the other co-defendants are still the owners, it is our opinion that as this is a mortgage on undivided common property, such mortgage could not be foreclosed partly against the other co-defendants to the exclusion of Manuel Guillermo.'

"However, the record in this case shows that the three children, in two separate documents, each mortgaged separately his ⅛ interest in 6 farms owned in common undividedly with others to answer *in solido* for the obligation of their father to Canet. Consequently, even if the proceeding herein be ultimately stayed as to the soldier, there is no reason why the foreclosure suit should not proceed as to Isabel Epitacia and Buenaventura. This would not have the effect, as contended by the lower court, of executing a mortgage partially. It would simply result in the foreclosure of the separate mortgages of Isabel Epitacia and Buenaventura. The purchaser at such foreclosure sale would succeed to their interest, including the right of partition. Sections 333, 334, Civil Code of Puerto Rico (1930 ed.); *Martínez* v. *Mora et al.*, 33 P.R.R. 144. Cf. *Benítez* v. *Bank of Nova Scotia*, 110 F. (2) 169, 172.

"There is still another approach justifying uninterrupted prosecution of the procedings as against the other defendants, in the event the soldier is granted a stay. As already indicated, each of the defendants herein is liable *in solido* for the entire amount of the obligation herein, and could be separately sued therefor (*Morales* v. *Cabrera, supra*). If a stay should be granted to the soldier, the plaintiff would therefore be entitled to a ruling as to the application of 50 U.S.C.A., Appendix, §524 that 'Where the person in military

service is a codefendant with others the plaintiff may nevertheless by leave of court proceed against the others'. See *Modern Industrial Bank* v. *Zaentz,* 29 N.Y.S.(2) 969, 973.

■ "The remaining questions raised in this case may be disposed of briefly. The district court was correct in pointing out that the Civil Relief Act applied both to a stay of a mortgage foreclosure suit (§§ 521 and 532) and to vacations of attachments (§523 (*b*) ), and that both situations are involved herein.

"There is no question of service of process here, as counsel for the defendants, appearing generally on behalf of all the defendants, filed an answer denying the allegations of the complaint.

■ "As to proof of military service, it may be more desirable to obtain, pursuant to Title 50, Appendix, U.S.C.A., §581, a certificate to that effect from the appropriate military official, than to rely on proof through other methods. But we see no reason why that method of proof should be insisted upon, to the exclusion of other competent and satisfactory evidence.

"The order of the district court staying the proceedings will be reversed and the case remanded for further proceedings not inconsistent with this opinion."

After a careful examination of the record, we find that the questions involved in the writ of certiorari were so clearly set forth by the Acting Judge in Vacation that there is no basis for the appeal and it may therefore be characterized as frivolous.

This matter deals with a juridical situation that may arise on other occasions, and moreover, since this court fully agrees with the decision of its Associate Justice as herein set forth, the court's acceptance of his decision as its own should not be delayed for the benefit of courts and litigants and of the community in general.

The motion to dismiss must be granted and the appeal dismissed as frivolous.

Mr. Justice Snyder did not participate herein.